IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division

| | |
|---|---|
| JEAN T. THOMAS, *et al.*, ) | |
| ) | |
| Plaintiffs, ) | |
| ) | |
| v. ) | Civil Action No. 3:12-cv-450 |
| ) | |
| WITTSTADT TITLE & ESCROW ) | |
| COMPANY, LLC, ) | |
| ) | |
| Defendant. ) | |

### MEMORANDUM IN SUPPORT OF MOTION FOR
### ATTORNEYS' FEES, COSTS, AND SERVICE AWARDS

Plaintiffs Jean T. Thomas and Heath B. Thomas ("Plaintiffs" or "Class Representatives"), and Defendant Wittstadt Title & Escrow Company, LLC ("Wittstadt") (collectively the "Parties"), submit this memorandum in support of their Motion for Attorneys' Fees, Costs, and Service Awards.

### STATEMENT OF THE CASE

On June 20, 2012, Plaintiffs filed this class action against Wittstadt alleging that the Defendant violated the Fair Debt Collection Practices Act ("FDCPA") during its foreclosure or attempted foreclosure of consumers' homes. Wittstadt filed its Answer to the Plaintiffs' Complaint, denying any liability, and simultaneously filed a motion to dismiss the Plaintiffs' Complaint. On September 4, 2012, Plaintiffs filed an Amended Complaint alleging three discrete violations of the FDCPA based on 1) Wittstadt's false statement that it had complied with Virginia Code § 55-59.1 when the underlying note was not lost or unavailable to the beneficiary and/or when it had not received an affidavit from the beneficiary of the note stating that the note or other evidence of indebtedness secured by the subject deed of trust was lost; 2) Wittstadt's

failure to provide consumers with a notice of the debt in accordance with 15 U.S.C. § 1692g(a) within five (5) days of its initial communication; and 3) Wittstadt's failure to notify consumers in its initial correspondence that they must notify Wittstadt of disputes regarding the debt "in writing" in order to trigger their rights under the FDCPA.  Additionally, the Plaintiffs also filed their opposition to the Defendants' motion to dismiss, arguing that their Amended Complaint had mooted Wittstadt's motion.  Thereafter, Wittstadt answered the Amended Complaint and denied any liability to the Plaintiffs and the putative classes.  The Parties then commenced the discovery process, and Plaintiffs served written discovery on the Defendant. After Plaintiffs received and reviewed discovery documents from Wittstadt, the Parties decided to explore settlement options.  The Parties believed that a strong possibility of settlement was attainable, and an early settlement would avoid the cost and consumption of judicial resources that litigation would require.  In the meantime, the Parties jointly moved to stay the case in order to pursue private mediation, which this Court granted on March 12, 2013.

On April 9, 2013, the parties engaged in an all-day mediation in the District of Columbia before Retired United States Magistrate Judge Barry R. Poretz.  During the mediation, the Parties extensively discussed the possibility of a class settlement, and while no finalized settlement was reached, the parties were able to find some common ground such that a settlement in the future seemed likely.  The mediation allowed the Parties the opportunity to begin crafting the parameters of a potential settlement.  Then on April 22, 2013, the Parties attended a second settlement conference in Richmond, Virginia presided over by United States Magistrate Judge David J. Novak.  The Parties resumed their settlement discussions and agreed to settle the case.  However, the details of the settlement terms remained open to negotiation.  Over the next couple

months, the Parties engaged in extensive arms-length negotiations and exchanges until they agreed upon a proposed class settlement that would provide classwide relief to consumers.

The Parties deferred any discussion of attorneys' fees or service awards to the named Plaintiffs until the substantive terms of the Settlement had been negotiated and agreed upon. Bennett Decl. ¶ 22 (attached as Exhibit "A"). Thus, Plaintiffs' counsel believes that the Settlement reached here is fair and the requested attorneys' fees and service awards are modest in comparison.

The settlement agreement, for which Plaintiffs will be seeking final approval shortly, requires Wittstadt to contribute $475,000 into a Settlement Fund for cash settlement payments to the Class Members, the costs to administer the settlement, attorneys' fees and costs, and incentive awards to the named Plaintiffs. The Class is divided into two categories of consumers: 1) those who suffered a completed foreclosure sale of their homes (the "Foreclosure Class"), and 2) those who did not suffer a completed foreclosure sale of their homes (the "Non-Foreclosure Class"). There are 613 Foreclosure Class members and 1,349 Non-Foreclosure Class members. Without the need to submit a claim form, prove damages, or satisfy any other burden, the Foreclosure Class members will each receive a settlement payout of $400.00, while the Non-Foreclosure Class members will each receive a payout of $50.00, for a total payout to class members of $312,459.00. Additionally, the agreed upon class settlement provides Plaintiffs' counsel uncontested fees in the amount of 25% of the Settlement Fund, or $118,750.00, plus up to $10,000.00 for costs and expenses. Wittstadt further agreed to pay each Plaintiff a $3,000.00 service award for their participation as representatives of the Class.

After negotiating a mutually agreeable class settlement agreement, the Parties then filed a Joint Motion for Preliminary Approval of the Class Action Settlement Agreement on June 25,

2013 seeking this Court's preliminary approval of the class action settlement. The Parties then filed an Amended Joint Motion for Preliminary Approval of the Class Action Settlement Agreement on August 7, 2013. On September 5, 2013, this Court granted preliminary approval of the settlement, including the agreed upon attorneys' fees and costs and the service award to the Plaintiffs, finding the terms of class settlement to be fair, reasonable, and adequate. Docket No. 30. Once the Court granted its preliminary approval of the proposed class settlement, the Parties commenced notifying the class members of the settlement. Class counsel spent significant amount of time in administering this settlement notice, including fielding numerous telephone calls from class members with questions about the notice they received and what the class settlement meant to them. This resulted in additional time expended by Plaintiffs' counsel. Based on their past experience, class counsel are aware that they will continue to spend additional time in administering the settlement, responding to class member inquiries, and assisting the settlement administrator with disbursement issues.

In light of this result, nearly the maximum award available under the FDCPA for a statutory damages class action, Plaintiffs request that the Court award the agreed-upon service awards to the Named Plaintiffs, as well as attorneys' fees and costs to Plaintiffs' counsel.

## ARGUMENT

**A. An award of 25% of the Settlement Fund is appropriate as attorneys' fees for the benefit secured for the Class.**

Courts generally recognize two methods for awarding attorneys' fees in class actions: the percentage method, which awards fees as a percentage of the benefit secured for the Class, and the lodestar method, which awards fees based on the value of Counsel's time spent litigating the claims. *Singleton v. Domino's Pizza, LLC*, __ F. Supp. 2d __, No. CIV.A. DKC 11-1823, 2013 WL 5506027, at *10 (D. Md. Oct. 2, 2013). The percentage method is favored where there is a

common fund, making the calculation of attorneys' fees as a percentage of the benefit a straightforward exercise. *Id.* The Supreme Court has consistently calculated attorneys' fees in common funds cases on a percentage-of-the-fund basis. *See Sprague v. Ticonic Nat'l Bank*, 307 U.S. 161, 165–67 (1939); *Boeing Co. v. van Gemert*, 444 U.S. 472, 478–79 (1980); *Blum v. Stenson*, 465 U.S. 886, 900 n.16 (1984); *see also* Report of the Third Circuit Task Force, *Court Awarded Attorney Fees*, 108 F.R.D. 237, 242 (Oct. 8, 1985) (noting that fee awards in common funds cases have historically been computed based on a percentage of the fund). Virtually every Circuit Court of Appeals has joined the Supreme Court in affirmatively endorsing the percentage of recovery method as an appropriate method for determining an amount of attorneys' fees in cases where a common fund is created. *See In re Thirteen Appeals Arising out of the San Juan DuPont Plaza Hotel Fire Litig.*, 56 F.3d 295, 307 (1st Cir. 1995); *Goldberger v. Integrated Res., Inc.*, 209 F.3d 43, 49 (2d Cir. 2000); *In re GMC*, 55 F.3d 768, 821–22 (3d Cir. 1995); *Rawlings v. Prudential-Bache Props., Inc.*, 9 F.3d 513, 515–16 (6th Cir. 1993); *Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1047–50 (9th Cir. 2002); *Gottlieb v. Barry*, 43 F.3d 474, 487 (10th Cir. 1994); *Camden I Condo. Ass'n, Inc. v. Dunkle*, 946 F.2d 768, 774 (11th Cir. 1991); *Swedish Hosp. Corp v. Shalala*, 1 F.3d 1261, 1268–70 (D.C. Cir. 1993).

In the Fourth Circuit, attorneys' fees in common fund cases are almost universally awarded on a percentage-of-the-recovery basis. *Deem v. Ames True Temper, Inc.*, No. 6:10-CV-01339, 2013 WL 2285972, at *4 (S.D. W. Va. May 23, 2013) (noting that "[d]istrict courts within the Fourth Circuit have consistently endorsed the percentage method," and collecting cases supporting this conclusion); *Smith v. Krispy Kreme Doughnut Corp.*, No. 1:05cv00187, 2007 WL 119157, at *1 (M.D.N.C. Jan 10, 2007); *see DeLoach v. Philip Morris Cos.*, No. 00-1235, 2003 WL 23094907, at *3 (M.D.N.C. Dec. 19, 2003) (citing, with approval for this same

proposition, *In re Compact Disc Minimum Advertised Price Antitrust Litig.*, 216 F.R.D. 197, 215 (D. Me. 2003)); *see also Strang v. JHM Mortg. Sec. Ltd. P'ship*, 890 F. Supp. 499, 502 (E.D. Va. 1995) (explaining "…the current trend among the courts of appeal favors the use of a percentage method to calculate an award of attorneys' fees in common fund cases.").

District courts within the Fourth Circuit have noted that most percentage fee awards range from 18 percent to 36 percent of the settlement fund. *See In re LandAmerica 1031 Exch. Servs., Inc. I.R.S. 1031 Tax Deferred Exch. Litig.*, MDL 2054, 2012 WL 5430841, at *4 (D.S.C. Nov. 7, 2012) (collecting cases). This is consistent with the practice of other circuit courts: a comprehensive study of attorneys' fees in class action cases notes "a remarkable uniformity in awards between roughly 30% to 33% of the settlement amount." Theodore Eisenberg & Geoffrey P. Miller, Attorney Fees in Class Action Settlements: An Empirical Study, 1 *J. Of Empirical Legal Studies* 27, 31, 33 (2004). This holds true even in instances where the class recovery runs into the hundreds of millions of dollars. *See, e.g.*, *In re Thirteen Appeals*, 56 F.3d at 295 (approving award of thirty percent of $220 million); *In re Combustion, Inc.*, 968 F. Supp. 1116, 1136 (W.D. La. 1997) (awarding thirty-six percent of $125 million). In cases of smaller funds, such as this one, 25% to 33.3% of the fund is the accepted award. *In re LandAmerica*, 2012 WL 5430841, at *4 (noting that the 25% requested fee "falls at the low end of the average range of fees awarded in common fund class actions"); *Deem*, 2013 WL 2285972, at *6 (awarding 33 1/3% of the settlement fund); *In re Bancorp Litig.*, 291 F.3d 1035, 1038 (8th Cir. 2002) (approving award of 36% of $3.5 million settlement fund); *Gwozdzinnsky v. Sandler Assoc.*, No. 97-7314, 1998 WL 50368, 159 F.3d 1346 (2d Cir. 1998) (unpublished) (affirming district court's award of 25% of $1 million common fund); *In re Educ. Testing Serv.*, 447 F. Supp. 2d 612, 631 (E.D. La. 2006) (concluding the customary fee award for class actions "is

between 22% and 27%"); *In re CMS Energy ERISA Litig.*, No. 02-72834, 2006 WL 2109499, at *1 (E.D. Mich. June 27, 2006) (awarding fee of 28.5% of $28 million settlement fund); *In re Xcel Energy, Inc.*, 364 F. Supp. 2d 980, 995 (D. Minn. 2005) (awarding 25% of $80 million settlement fund); *Strougo ex rel. Brazilian Equity Fund, Inc. v. Bassini*, 258 F. Supp. 2d 254, 262 (S.D.N.Y. 2003) (granting attorneys' fees in amount of 33 1/3% of $1.5 million settlement fund); *Maley v. Del Global Techs. Corp.*, 186 F. Supp. 2d 358, 370 (S.D.N.Y. 2002) (awarding 33.3% of $3.8 million settlement fund); *Kidrick v. ABC Television & Appliance Rental*, No. 3:97cv69, 1999 WL 1027050, at *1–2 (N.D. W. Va. May 12, 1999) (awarding 30.6% of approximately $400,000 settlement fund, noting that "[a]n award of fees in the range of 30% of the fund has been held to be reasonable. . . . Fees as high as 50% of the fund have been awarded.") (internal citations omitted). Since the Settlement creates a common fund for the Rule 23(b)(3) Settlement Class, it is appropriate for the Court to award fees as a percentage of that fund.

In this case, the Defendant has agreed not to oppose Class Counsel's fee request for 25% of the Settlement Fund. (Settlement Agreement, Ex. A to Mem. in Supp. of Joint Mot. for Prelim. Approval of Class Action Settlement Agreement, ¶ 2.3.) The Class was informed by direct mail notice of Counsel's plan to request this amount, and the Class has universally approved the request, as evidenced by the fact that there was not a single objection to the settlement. With this amount for fees and expenses taken from the fund, consumers whose homes were foreclosed and had a Trustee's Deed recorded for the property will receive $400.00 and consumers who only received a letter from the Defendant but whose home was not sold at foreclosure auction will receive $50.00. Bennett Decl. ¶ 21.

In this case, Class Counsel bore the risk of the litigation entirely and advanced significant funds in furtherance of the litigation. Bennett Decl. ¶ 26; Kelly Decl. ¶ 10 (attached as Exhibit

"B"); Pittman Decl. ¶ 35 (attached as Exhibit "C"). A fee and expense award of 25% of the cash recovered for the Class is therefore reasonable. See *In re Microstrategy*, 172 F. Supp. 2d at 788 ("But finally and equally importantly, the process of setting a proper fee in a [securities class action] case must include an incentive component to ensure that competent, experienced counsel will be encouraged to undertake the often risky and arduous task of representing a class in a securities fraud case."). While 30% or even more is justifiable compensation for Class Counsel in many matters, including those approved by this Court historically, the 25% rate requested is plainly reasonable and falls well-within established Fourth Circuit guidelines. *See In re LandAmerica*, 2012 WL 5430841 at *4; *see also* Theodore Eisenberg & Geoffrey P. Miller, Attorney Fees in Class Action Settlements: An Empirical Study, 1 *Journal of Empirical Legal Studies* (2003), analyzing data from Stuart J. Logan, Jack Moshman & Beverly C. Moore, Jr., Attorney Fee Awards in Common Fund Class Actions, 24 *Class Action Rep.* 169 (2003).

As with any class case that they agree to take on, Plaintiffs' counsel live by the result that they obtain for the class members. In this case, where they bore the risk of the litigation entirely and advanced significant funds in furtherance of the litigation, Class Counsel submits that fee of 25% of the cash recovered for the class is reasonable. Class Counsel in this case has consistently taken the position in all cases that the attorneys fee should be based on a percentage of the recovery obtained for the class. This has been true even in cases where the result is an objectively small fee, such as in *Mayfield v. Memberstrust Credit Union*, 3:07cv506 (E.D. Va. Nov. 7, 2008), where the class size was so small that counsel's fee award was $8,300.00, well below the actual lodestar time counsel had worked. Indeed, in *Conley v. First Tennessee*, 1:10cv1247 (E.D. Va.), counsel took the same consistent position with respect to a class of 350 consumer and resulted in recovery of an approved fee of only $20,000.00. (Docket No. 37). The

same is true in another case, *Lengrand v. Wellpoint*, No. 3:11Cv333-HEH (Docket No. 42), in which counsel requested a percentage of fund recovery even though the class size discovered was very small and the fee requested, $8,550.00, was a small fraction of the large fee counsel actually incurred in lodestar. In each case, the standards of Rule 23 demand that Class Counsel represent the interest of the class with the same attention, zeal and competence whether the class is in the hundreds of thousands such as *Ryals v. HireRight Solutions*, or is less than a hundred as in *Lengrand v. Wellpoint*.

> As one Court pointedly reasoned:
>
> Simply put, the class action vehicle is broken. While it may not instantaneously or completely resolve the problems that currently inhere in this type of litigation, tying the award of attorneys' fees to claims made by class members is one step that judges can take toward repair. This approach will not only encourage more realistic settlement negotiations and agreements, but also will drive class counsel to devise ways to improve how class action suits and settlements operate. See Deborah R. Hensler and Thomas D. Rowe, Jr., *Beyond "It Just Ain't Worth It": Alternative Strategies for Damage Class Action Reform*, 64 Law & Contemp. Probs. 137, 150 (2001) (" 'The single most important action that judges can take to support the public goals of class action litigation is to reward class action attorneys only for lawsuits that actually accomplish something of value to class members and society.' **To this end, ... analysts recommend[ ] that judges award fees based on the actual amounts paid out by defendants to class members, notwithstanding contrary case law." (quoting Deborah Hensler et al., Rand, Class Action Dilemmas: Pursuing Public Goals for Private Gain-Executive Summary 33 (1999))). Class counsel will have an incentive to pay attention to the needs and desires of the class and to "think outside the box" to devise better notice programs, settlement terms, and claim procedures, all to the benefit of the consumers who have been harmed.**
>
> *In re TJX Cos. Retail Sec. Breach Litig.*, 584 F. Supp. 2d 395, 406 (D. Mass. 2008)

(emphasis added).

In this case, Class Counsel shouldered the entire risk of the litigation, appropriately staffing it with experienced counsel, spending significant time to investigate the case prior to filing, conducting the back and forth of discovery, and finally negotiating over a period of

months to reach this conclusion. Doing so required the litigation of a complex federal case while at the same time attempting to find the terms where the parties might find compromise. The risks taken should be compensated, as law recognizes. But there was certainly substantial investment and risk incurred. Class Counsel requests a fee based on a percentage of the cash fund extracted from the Defendant. There is no doubt that the excellent outcome in this case for the Class was the hard work by a group of skilled consumer protection lawyers.

In fact, Judge Ellis recently approved and complimented Plaintiffs' present team of proposed Class Counsel during a hearing for final approval of a very similar class action settlement—*Tsvetovat, v. Segan, Mason, & Mason*. *Tsvetovat* was a class action case premised on FDCPA violations very similar to the ones alleged in this case. The *Tsvetovat* case also settled for a common fund amount of $475,000, and just as here, Class Counsel requested a 25% contingency fee. Judge Ellis granted class counsel's fee request as a reasonable one. *See Tsvetovat, v. Segan, Mason, & Mason, PC,* Civ. Action No. 1:12-cv-510, Settlement Hr'g Tr. 26:8-16, April 12, 2013 (stating "And again, I want to compliment counsel on making the effort to settle this matter, and to have succeeded. I think it's a sensible, reasonable settlement.").

In this case, and in all cases in which Plaintiffs' counsel will come before this Court, they submit that the proper measure of compensation should be driven by the benefit actually obtained for the class members. Because Class Counsel's requested fee of 25% is reasonable under the circumstances of this case and the applicable law, the Court should award it.

**B.     The Court should also award Counsel's reasonably incurred expenses of litigation.**

The Defendant has also agreed to reimburse Counsel's reasonably incurred expenses, with the total awards for fees and expenses not to exceed the agreed amounts. Settlement Agreement, Ex. A to Mem. in Supp. of Joint Mot. for Prelim. Approval of Class Action

Settlement Agreement, ¶ 2.3. Counsel here request expense awards of $7,063.84 in connection with the Rule 23(b)(3) fee. Courts regularly award litigation expenses in addition to attorneys' fees in class-action cases. *Kabore v. Anchor Staffing, Inc.*, No. L-10-3204, 2012 WL 5077636, at *10 (D. Md. Oct.17, 2012) ("It is well-established that plaintiffs who are entitled to recover attorneys' fees are also entitled to recover reasonable litigation-related expenses as part of their overall award."). The Fourth Circuit has explained that such costs and expenses may include "those reasonable out-of-pocket expenses incurred by the attorney which are normally charged to a fee-paying client, in the course of providing legal services." *Spell v. McDaniel*, 852 F.2d 762, 771 (4th Cir. 1988) (internal quotations omitted). Fourth Circuit courts have awarded costs such as "necessary travel, depositions and transcripts, computer research, postage, court costs, and photocopying." *Singleton*, 2013 WL 5506027, at *17 (D. Md. Oct. 2, 2013).

Counsel's expenses here, totaling $7,063.84, all fall into these categories, and were all reasonably incurred in pursuing this litigation. Kelly Decl. ¶ 10; Pittman Decl. ¶ 35. Counsel's expenses were reasonable and necessary to litigate this case, and the Court should therefore award them. *Singleton*, 2013 WL 5506027, at *17 (awarding expenses that the court deemed were "reasonable and typical").

C.     **The reaction of Class Members also favors granting the requested fee.**

No class members have objected to the requested fee award, indicating that the Class overwhelmingly supports the Settlement. *In re Wachovia Corp. ERISA Litig.*, No. 3:09cv262, 2011 WL 7787962, at *4 (W.D.N.C. Oct. 24, 2011) (finding class members implicitly approved settlement, including attorneys' fee term, where four of 150,000 class members filed formal objections); *Jones v. Dominion Res. Servs., Inc.*, 601 F. Supp. 2d 756, 763 (S.D. W. Va. 2009) (approving award of attorneys' fees where one class member objected to settlement, and finding

"the Class Members to have demonstrated approval of the instant fee request and agreement to pay such an amount"); *see also Stoetzner v. United States Steel Corp.*, 897 F.2d 115, 118–19 (3d Cir. 1990) (concluding that when "only" 29 members of a 281 person class (10% of the class) objected, the response of the class as a whole "strongly favors [the] settlement"); *Elkins v. Equitable Life Ins. of Iowa*, No. CIVA96-296-CIV-7-17B, 1998 WL 133741, at *28 (M.D. Fla. Jan. 27, 1998) ("[t]here have been only six objections received from a Class of approximately 109,000 policy owners, which is a de minimus number" relative to the size of the class). Indeed, only 2 class members have asked to exclude themselves from the settlement. In short, class member reaction to the Settlement, including the fee request, has been overwhelmingly positive.

D.      **The Court should award the agreed-upon service awards to the Class Representatives.**

Courts generally recognize that "[i]ncentive or service awards reward representative plaintiffs' work in support of the class, as well as their promotion of the public interest." *Deem*, 2013 WL 2285972, at *6 (citing *Jones*, 601 F. Supp. 2d at 767). Plaintiffs request, and the Defendant does not oppose, an incentive award of $3,000 each for their service as Class Representatives. (Settlement Agreement, Ex. A to Mem. in Supp. of Joint Mot. for Prelim. Approval of Class Action Settlement Agreement, ¶ 2.3) In this case, the Plaintiffs chose to serve as the Named Plaintiffs in this lawsuit after Class Counsel explained to them the responsibilities required. Cognizant of those responsibilities, Plaintiffs began this lawsuit with the intent to vigorously pursue it, for themselves and the benefit of the Class Members they represent. The Class Representatives understood the theories of this lawsuit, kept abreast of the case's status, reviewed documents provided to them, and discussed with aspects of the case, discovery issues, and settlement negotiations with counsel. Service awards have been regularly approved by judges in the Eastern District of Virginia in cases such as this one where the class representative

took a role in prosecuting the claims on behalf of the class. *Tsvetovat, v. Segan, Mason, & Mason, PC,* Civ. Action No. 1:12-cv-510 (E.D. Va. Apr. 25, 2013) (Judge Ellis approved a $6,000 incentive award to each named Plaintiff); *Cappetta v. GC Servs. LP*, No. 3:08cv288-JRS (E.D. Va. April 27, 2011) (Judge Spencer approved a $5,000 service award to each named plaintiff); *Henderson v. Verifications Inc.*, No. 3:11cv514 (E.D. Va. Mar. 13, 2013) (Judge Payne approved a $5,000 service award to named plaintiff); *Pitt v. Kmart Corp., et al.*, No. 3:11cv697 (E.D. Va. May 24, 2013) (Judge Gibney approved a $5,000 service award to the class representative); *Conley, et al. v. First Tennessee Bank, N.A.*, No. 1:10cv1247 (E.D. Va. Aug. 18, 2011) (Judge Ellis awarded a $5,000 service award to each named plaintiff); *Ryals, Jr. et al. v. HireRight Solutions, Inc.*, No. 3:09cv625 (E.D. Va. Dec. 22, 2011) (Judge Gibney approved an service award to each class representative in the amount of $10,000). Here, the Named Plaintiffs amply fulfilled their duties as Class Representatives, and a modest $3,000 service award to each Class Representative is appropriate.

## CONCLUSION

For the reasons set forth above, the Plaintiffs move that the Court enter an order awarding attorneys' fees to class counsel in the amount of $118,750, the reimbursement of costs incurred in the amount of $7,063.84, and service awards in the amount of $3,000 to each Class Representatives.

Respectfully Submitted,
**JEAN THOMAS and**
**HEATH THOMAS**

By: _____/s/_____

Matthew J Erausquin (VSB #65434)
CONSUMER LITIGATION ASSOCIATES, P.C.
1800 Diagonal Road, Suite 600
Alexandria, VA 22314
Phone: (703) 273-7770
Fax: (888) 892-3513
matt@clalegal.com

Kristi C. Kelly, Esq. (VSB #72791)
J. Chapman Petersen, Esq. (VSB #37255)
SUROVELL ISAACS PETERSEN & LEVY, PLC
4010 University Dr. Suite 200
Fairfax, VA 22030
Phone: (703) 277-9774
Fax: (703) 591-9285
Email: kkelly@siplfirm.com

Dale W. Pittman (VSB #15673)
THE LAW OFFICE OF DALE W. PITTMAN, PC
The Eliza Spotswood House
Petersburg, VA 23803
Phone: (804) 861-6000
Fax: (804) 861-3368

Leonard A. Bennett (VSB #37523)
Susan M. Rotkis (VSB #40693)
CONSUMER LITIGATION ASSOCIATES, P.C.
763 J. Clyde Morris Blvd., Suite 1-A
Newport News, VA 23601
Phone: (757) 930-3660
Fax: (757) 930-3662

## **CERTIFICATE OF SERVICE**

      I hereby certify that on this 5th day of December, 2013, I have electronically filed the foregoing with the Clerk of Court using the CM/ECF system, which will then send a notification of such filing (NEF) to the following:

Jan E. Simonsen (VSB #29152)
Matthew D. Berkowitz (VSB # 72728)
Kristine M. Ellison (VSB # 80329)
CARR MALONEY P.C.
2000 L. Street, NW
Suite 450
Washington, DC 20036
Phone: (703) 310-5500
Fax: (703) 310-5555
Email: jes@carrmaloney.com
Email: mb@carrmaloney.com
Email: kme@carrmaloney.com
*Attorneys for the Defendant*

                                                  /s/
                              Matthew J. Erausquin, VSB No. 65434
                              *Counsel for the Plaintiff*
                              CONSUMER LITIGATION ASSOCIATES, P.C.
                              1800 Diagonal Rd., Suite 600
                              Alexandria, VA  22314
                              Tel: 703-273-7770
                              Fax: 888-892-3512
                              matt@clalegal.com